## Thompson's Estate.

*Landlord and tenant—Agreement to renew lease.*

Where a tenant has an option to renew a lease upon written notice, and if he does not renew the lease he is to pay the landlord a certain sum at the end of the term, and prior to the end of the term he transfers his business to his sons, but gives no notice of intention to renew, does not surrender the premises, does not pay to the landlord the amount stipulated in case he failed to renew, and the landlord refuses to release the tenant or to accept the sons in his place, the lease will be deemed to have been renewed, and the tenant will be liable for the rent.

Argued Jan. 26, 1903. Appeal, No. 317, Jan. T., 1902, by Elizabeth H. H. Thompson, from decree of O. C. Phila. Co., April T., 1902, No. 407, dismissing exceptions to adjudication in estate of E. O. Thompson, deceased. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to adjudication of ASHMAN, J.

The material portion of the adjudication was as follows :

A claim for rent of premises to 1338 Chestnut street, in the sum of $7,110.76, of which $402.45 was interest, was presented by Albert H. Mershon, trustee. It was founded upon a lease executed by decedent and dating from September 1, 1896, for two years, with an option to the lessee to renew or extend the lease for a further period of three years.

The lease was alleged to have been renewed and the claim is for rent which accrued during the last seven months of the renewal period. A lease executed by the testator as lessee and dated July 20, 1895, to go into effect September, 1896, was produced, which provided that the lessee should have the above described option to extend the term, and in case he should not avail himself of the privilege should pay to the lessor the sum of $1,500. It also provided for a further option to extend from September 1, 1901, but at an increased rental and added " the said option shall be exercised by the said Ethan O. Thompson, by his giving written notice thereof to said Albert H. Mershon, trustee (the lessor) nine calendar months previous to the expiration " of the then current term. This lease was executed by Benjamin Thompson, as attorney in fact, for E. O. Thomp-

son by virtue of a power of attorney attached to the instrument. On March 15, 1897, the decedent transferred his business to his sons Benjamin and E. O. Thompson, Jr. He gave no notice of an intention to terminate the lease, and he did not pay the sum of $1,500 stipulated in the lease to be paid in case he did not exercise the option to continue. During the continuance of the term, the lessor received a note dated November 27, 1898, and worded as follows: " Agreeable to our conversation we will accept a continuance of our lease. Yours truly, E. O. Thompson's son, for E. O. Thompson." On the strength of that note the lease was renewed and rent was paid thereon until March 1, 1901. It was alleged that all dealings respecting this renewal were had with Benjamin Thompson. It was not denied, however, as indeed, it could not be, that he acted in a representative character. He had a power of attorney from the original lessee to execute a lease in the name of the lessee. The power extended no further and was exhausted when the attorney in fact signed the lease. The acceptance of this offer ostensibly made in decedent's name could not of course without notice to him, bind the decedent.

But there was evidence that he knew of. the proposal and assented to it. Rejecting the testimony of the lessor who was probably incompetent as a witness under the act, it was shown by the secretary of the Real Estate Trust Company, that at the request of the decedent he prepared an assignment on or about March, 1900, of the lease in question to E. O. Thompson's sons, but that the lessor refused to accept such assignment, and that in consequence it was never executed. This was after the original term had expired, but its effect was to show that the decedent recognized his liability under the lease, because this action in seeking to assign would otherwise have been meaningless. It was also shown that the receipts for the rents during the occupancy of the new firm were made out in the name of the decedent as lessee, and that some of them, at least, were read by him. To the letter, which he wrote under date of November 13, 1899, asking that his sons might be accepted as tenants in his place, and that he might be released, the trustee replied that his sons had not been accepted as tenants. The decedent had made a similar request on April, 1897, when he transferred his business to his sons and had been re-

fused.   Various letters and receipts were produced, which tended strongly to show the continuance of the original relation of the lessor and lessee between the decedent and claimant.   Among them may be mentioned a letter dated April 3, 1900, from the trustee to the decedent for rent due March and unpaid, which enclosed a bill for the same against the decedent.   This was followed by a receipt from the trustee to E. O. Thompson dated April 5, 1900, for the rent named in the letter. A similar letter, under date of August 17, 1900, addressed to decedent, demanded the rent due in the preceding month and a receipt, dated September 3, 1900, for the money made out in decedent's name and also produced at the audit.   The evidence taken as a whole, the auditing judge thinks, shows definitely enough that the decedent was never released as a tenant.   The claim is allowed in the sum named, less $418.20 as the cost of an elevator placed in the premises by decedent.

*Error assigned* was in dismissing exceptions to adjudication.

*C. Berkeley Taylor*, with him *Charles E. Patterson* and *John G. Johnson*, for appellant.

*Alex. Simpson, Jr.*, with him *Mershon & Graham*, for appellee.

OPINION BY MR. JUSTICE POTTER, May 4, 1903:

The decedent, E. O. Thompson, rented certain premises from A. H. Mershon, for two years, from September 1, 1896, at $10,000 per annum with the right to extend the lease for three years from September 1, 1898, at $11,500 per annum.   In case the option to renew was exercised, written notice was to be given nine months previous to the expiration of the term.   If the lease was not renewed, Thompson was to pay Mershon $1,500 additional, upon September 1, 1898. The decedent transferred his business to his two sons on March 15, 1897.   He gave no notice of an intention to terminate the lease, nor did he pay the $1,500 which he was to pay in case the option to renew was not exercised.   In April, 1897, he asked to have his sons accepted as tenants in his stead, but the appellee refused.   Again in November, 1899, he asked for a written release of himself as tenant of the prem-

ises, and the acceptance of his sons in his stead. The appellee replied, stating that there had been no acceptance of the sons, as tenants in his place. The matter then apparently rested until March, 1900, when the decedent employed an attorney to secure his release, if possible; but he was not successful.

The learned auditing judge of the orphans' court reviewed the evidence as a whole, and found as a fact that decedent was never released as a tenant, and he therefore allowed the claim for the balance of unpaid rent, against the estate.

We agree with the conclusion of the court below, thus reached. It is apparent that the decedent could not relieve himself of liability under the lease by merely assigning it to his sons. They must be accepted by the lessor as tenants in place of the lessee in order to discharge him, and the evidence falls short of showing any such acceptance. The persistent attempts of the decedent to obtain his release are in themselves strong indications of his recognition of his continued liability.

The decree is affirmed, and the appeal is dismissed at the cost of appellant.